RECEIVED
IN LAKE CHARLES, LA
AUG 23 2005
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **RDS, INC.** | : | **DOCKET NO. 2:03 CV 1786** |
| **VS.** | : | **JUDGE MINALDI** |
| **GAB ROBINS NORTH AMERICA, INC. AND FIREMAN'S FUND INSURANCE COMPANY** | : | **MAGISTRATE JUDGE WILSON** |

## MEMORANDUM RULING

Presently before the court is a Motion for Summary Judgment, Alternatively a Motion for Partial Summary Judgment on Behalf of Fireman's Fund Insurance Company ("FFIC") [doc. 21] and a Motion for Summary Judgment by GAB Robins North America, Inc. ("GAB") [doc. 23]. These motions have been opposed by the plaintiff [docs. 27, 28].

Summary Judgment Standard

Summary judgment is appropriate when the movant is able to demonstrate that the pleadings, affidavits, and other evidence available to the Court establish that there are no genuine issues of material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c); See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. 2548, 2552-54, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); and *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-88, 106 S.Ct. 1348, 1355-57, 89 L.Ed.2d 538 (1986). When the nonmoving party has the burden of proof on an issue, the movant must state the basis for the motion and identify those portions of the pleadings, depositions, admissions, answers to interrogatories, together with

FFIC issued policy number 8H1MXG8078484775 effective 6/1/01 to 6/1/02 to RDS as part of Mr. Gatti's Pizza franchise insurance program that provided contents, building and business interruption coverages for the premises at issue.[3]

The evening of February 24, 2002, a fire occurred at the Mr. Gatti's restaurant owned and operated by RDS.[4]

GAB, a claims adjustment company, inspected the premises and began investigating the fire the day after the fire.[5] The fire at the restaurant was a "major fire" requiring the closure of the restaurant and the complete reconstruction of the building.[6] The reconstruction required the involvement of, consultation with and approval by city officials, code and permitting personnel as well as an architect.[7] The architect retained for the job was Randall Broussard.[8]

The architect had to submit plans for the fire marshal's approval before reconstruction could begin.[9] The contractors could not bid on the reconstruction project until the architect's plans had been submitted and could not begin work until the architect's plans were approved by the fire marshal.[10]

---

[3] FFIC policy; Deposition of William Keeley, Jr. pp. 39-42.

[4] Plaintiff's petition ¶ 5.

[5] Deposition of William Keeley, Jr. pp. 32.

[6] Plaintiff's petition, ¶ 5; Deposition of William Keeley, Jr. p. 32.

[7] Deposition of William Keeley, Jr. pp. 44, 53-54.

[8] Deposition of William Keeley, Jr. p. 59.

[9] Deposition of William Keeley, Jr. pp. 54-59.

[10] Deposition of William Keeley, Jr. pp. 54-59, 135-136.

"Major changes" due to code upgrades and code compliance regarding certain aspects of the reconstruction, particularly the rebuilding of the dining room floor and the bathrooms, were not presented nor known by the city/code officials until April 30 and May 6, 2002.[11]

The architect's final plans were submitted on May 14, 2002.[12]

Contractor bids were returned on May 28, 2002.[13]

Fire marshal approval of the architect plans was received June 14, 2002.[14]

The contract for reconstruction was executed July 1, 2002 and work was begun after July 4, 2002.[15]

Prior to accepting the FFIC policy issued to RDS, William Keeley, Jr., the owner of RDS, had the opportunity to review the Mr. Gatti's Pizza franchisee insurance proposal that set forth what coverages and limits were being offered.[16]

The insurance proposal contained business interruption limits in the amount of $142,000.[17] The business interruption limits were increased by FFIC to $242,000 shortly after the fire in March 2002.[18] FFIC paid the $242,000 business interruption limit as of September 2002 and paid all other

---

[11] Deposition of William Keeley, Jr. pp. 122, 124-126.

[12] Plaintiff's petition ¶ 9; Deposition of William Keeley, Jr. pp. 62-63, 127.

[13] Deposition of William Keeley, Jr. pp. 62-63; 127.

[14] Deposition of William Keeley, Jr. pp. 135-136.

[15] Deposition of William Keeley, Jr. p. 138.

[16] Deposition of William Keeley, Jr. pp. 39, 42, 188-190, 195-196.

[17] *Id.*

[18] Deposition of William Keeley, Jr. pp. 92-95, 149-150, 154-155, 172, 196. FFIC policy Sequential Endorsement Number 3 dated 3/28/02 (made effective retroactively to 6/1/01).

applicable coverages and limits, including building contents, reconstruction costs and code upgrades.[19] The 120 day extension provision for payment of business interruption coverage is expressed in FFIC's policy as being subject to the policy's business interruption limits.[20]

The restaurant re-opened on October 20, 2002.[21]

RDS returned the restaurant to its original owner by way of a "friendly foreclosure" approximately one year after reopening in November, 2003.[22]

Law and Analysis

RDS raises claims which are based upon an alleged delay in the commencement of reconstruction and RDS also alleges that it is entitled to damages from FFIC when FFIC raised RDS's business interruption limits from $142,000 to $242,000. The plaintiff also alleges that FFIC and GAB made mistakes in adjusting the plaintiff's claims in that GAB delayed producing a "scope of work with prices" and this delayed repairs.[23]

Louisiana Revised Statute 22:1220 sets forth the duties imposed upon an insurer:

> A. An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.
>
> B. Any one of the following acts, if knowingly committed or performed by an

---

[19]  Deposition of William Keeley, Jr. pp. 133, 154-155, 157-159, 172.

[20]  FFIC policy, "Business Income Coverage Form," Section (F)(1).

[21]  Deposition of William Keeley, Jr. p. 148

[22]  Deposition of William Keeley, Jr. pp. 9, 20-21.

[23]  Petition ¶¶ 9, 10.

insurer, constitutes a breach of the insurer's duties imposed in Subsection A:

(1) Misrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue.

(2) Failing to pay a settlement within thirty days after an agreement is reduced to writing.

(3) Denying coverage or attempting to settle a claim on the basis of an application which the insurer knows was altered without notice to, or knowledge or consent of, the insured.

(4) Misleading a claimant as to the applicable prescriptive period.

(5) Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause.

LSA-R.S. 22:1220

To the extent that the plaintiff's claims arise out of Louisiana's general rules of negligence, Louisiana applies a duty-risk analysis. A duty-risk analysis involves five elements: (1) the defendant's conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (2) the defendant had a duty to conform his conduct to a specific standard (the duty element); (3) the defendant's conduct failed to conform to the appropriate standard (the breach element); (4) the defendant's conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) the plaintiff suffered actual damages (the damages element). *Goins v. Wal-Mart Stores, Inc.*, 2001-1136 (La.11/28/01), 800 So.2d 783. The threshold question in any duty-risk analysis is whether the defendant owed a duty to the plaintiff, and whether a duty is owed is a question of law. *Pinsonneault v. Merchants & Farmers Bank & Trust Co.*, 2001-2217 (La.04/03/02), 816 So.2d 270; *Plaintiff-Respondent v. STEVENSON STROGEN, II, Defendants-Applicants STEVENSON STROGEN, GENEVA STROGEN, ANTHONY G. DAVIS, LINDEN ASSET*

*MANAGEMENT CO., LEE JETER, ABC INSURANCE COMPANY, DEF INSURANCE COMPANY AND XYZ INSURANCE COMPANY* 39,829 , *4 (La.App. 2 Cir., 2005).

The defendants argue that the crux of the plaintiff's claims are that GAB and/or FFIC failed to timely prepare scopes of work for RDS such that the reconstruction of the restaurant was delayed, such delay leaving RDS without business interruption payments under its FFIC policy for the last two months of the six-month reconstruction project.[24] FFIC argues that despite the plaintiff's contentions of alleged policy errors regarding his business interruption limits, it is clear that the plaintiff's claims are "tied wholly to one thing - the alleged delay in the commencement of the reconstruction of the building."[25] Mr. Keeley testified that he probably would not have filed suit had the construction been completed four months earlier.[26]

GAB was retained by FFIC. It is well settled in Louisiana law that a claims adjuster, as the disclosed agent of another, has no duty to the insured.[27] GAB agreed to proved the plaintiff with a copy of the "scope of work"[28] prepared for FFIC as a courtesy. RDS was informed that they did not have to wait for the scope of work to take bids and begin the reconstruction of the restaurant.[29] There

---

[24] Plaintiff's petition ¶¶ 12-13.

[25] Memorandum in Support of FFIC Summary Judgment, p. 7.

[26] Deposition of William Keeley, Jr., pp. 183-184.

[27] La Civil Code Art. 3016.

[28] A "scope of work" is something an adjuster may compile for his insurance company client to show what work may be covered under the policy. Although a copy may be given to the insured as a courtesy and/or to minimize disagreement, it is not something that an insurer is obligated to provide. See Affidavit of Paul Gauthier.

[29] GAB also argues any claim of RDS has prescribed as GAB failed to provide the scope of work in May and June 2202, but was not sued until July 29, 2003. Arguably this claim

was no relationship between RDS and GAB on which to base a duty owed to RDS. It is well settled that a claims adjuster has no duty to an insured.[30] As noted by GAB, this issue was succinctly discussed by Judge Sarah Vance in *Rich v. Bud's Boat Rentals, Inc.*, 1997 WL 785668 (E.D., La. 1997):

> This Court has found no case imposing a duty on an independent insurance adjuster to an insured to conduct a proper investigation or to advise an insured of coverage issues. Further, Louisiana courts have consistently held that, as a general rule, there is no duty on the part of an insurance adjuster to advise a claimant of the proper prescriptive period. *Trainer v. Aycock Welding Co.*, 421 So.2d 416, 417 (La.App. 1st Cir.1982) ("There is no duty on the part of an insurance adjuster to advise a claimant on the proper prescriptive period."); *Pellerin v. Cashway Pharmacy of Franklin, Inc.*, 396 So.2d 371, 373 (La.App. 1st Cir.1981) ("As a general rule, there is no relationship existing between a claimant and the insurance adjuster on which a duty to inform of prescription can be based."); *Flowers v. United States Fidelity & Guaranty Co.*, 367 So.2d 107, 110 (La.App. 4th Cir.) (holding that "as adversaries, there is no relationship existing between the plaintiffs and the insurance adjuster on which a duty to inform of prescription can be based"), *rev'd on other grounds*, 381 So.2d 378 (La.1979); *White v. Hartford Casualty Ins. Co.*, 297 So.2d 744, 746 (La.App. 1st Cir.1974) ("We further hold that insurance adjusters have no duty to advise claimants on the Louisiana law of prescription.").

*Rich v. Bud's Boat Rentals, Inc. L*, 785668, *3 -4 (E.D.La.,1997).

Mr. Keeley was allegedly upset at the amount of time it took before his restaurant was rebuilt and was able to re-open. The evidence shows, however, that the delay was not attributable to either FFIC or GAB. This was a major fire and the extent of the claim was beyond the initial

---

could arise in contract rather than tort. This need not be addressed, however, as RDS's claim will be dismissed on the merits as discussed herein.

[30] *Flowers v. U.S. Fidelity & Guaranty Co.*, 367 So.2d 107, 110 (La. App. 4 Cir. 1979), *affirmed in part and amended*, 381 So.2d 378 (La. Sep. 04, 1979); *Larkin v. First of Georgia*, 466 So.2d 655 (La. App. 5 Cir. 1985).

adjuster's and FFIC's scope of responsibility.[31] On February 28, 2002, Mr. Keeley was informed by the GAB adjuster (Paul Gauthier) that, because of the size and scope of the fire, there would have to be extensive involvement by city officials, code and permitting officials, as well as an architect.[32] Mr. Keeley testified that he was aware that the project could last from four to six months.[33]

Mr. Keeley testified that he understood that an architect would have to submit plans to the fire marshal for approval before rebuilding could begin.[34]

During the reconstruction project it was discovered that significant code upgrade and code compliance issues were present. Two issues required the tearing out and lowering of the restaurant's dining room floor level, as well as a significant change to the facility's restrooms.[35] These issues did not become known to city/code officials until April 30 and May 6, 2002.[36] These changes were incorporated into the architect's final plans which were submitted on May 14, 2002.[37] RDS and its

---

[31] Deposition of William Keeley, Jr., p.32.

[32] Deposition of William Keeley, Jr., pp. 44, 53-54. There were also numerous upgrades that had to be done to the facility pursuant to the requirements of the Mr. Gatti's franchise agreement. Deposition of William Keeley, Jr., pp. 74-88.

[33] Deposition of William Keeley, Jr., p. 54. On the second page of the plaintiff's opposition, he asserts that the depositions of the contractor, architect and plaintiff dispute the defendant's contention that the delays were due to code upgrades, franchise requirements, Fire Marshal and architect. However, Keeley testified that without the delay, RDS would not be making these claims. Deposition of Keeley, p.p. 183-184. Neither the architect, contractor nor plaintiff could identify any actions or inactions by FFIC that caused or contributed to any delay in beginning the reconstruction.

[34] Deposition of William Keeley, Jr., pp. 54- 59, 135-136.

[35] Deposition of William Keeley, Jr., pp. 122-126.

[36] Deposition of William Keeley, Jr., pp. 122, 124-126.

[37] Deposition of William Keeley, Jr., pp. 62-63, 127; Plaintiff's petition ¶ 9.

9

contractor received bid returns on May 28, 2002.[38] Work could not begin until fire marshal approval was received and this approval came on June 14, 2002.[39]

According to RDS, it would not let out a contract for the reconstruction until it had GAB's scope of work - which Mr. Keeley stated that he did not receive until June 25, 2002.[40] Mr. Keeley acknowledged that he had been told by the GAB adjuster that RDS need not wait for the scope of work to award the contract and begin reconstruction.[41] Mr. Keeley further testified that he knew the project would take approximately three months to complete once the actual work began.[42] Although Mr. Keeley was told that the work could begin, the contract for the construction work was not executed until July 1, 2002, and work did not begin until after July 4, 2002.[43] Work was completed and the restaurant re-opened on October 20, 2002.[44]

GAB argues that the only hindrance in awarding the contract in this case, was the Fire Marshal's approval of the architect's final plan. Mr. Keeley admitted neither GAB or FFIC played any role in the preparation or submission of that plan.[45]

---

[38] Deposition of William Keeley, Jr., pp. 62-63, 127; Contractor Bid Returns, attached as Exhibit 3 to deposition of Keeley.

[39] Deposition of William Keeley, Jr., pp. 135-136; Fire Marshal Approval Package attached as exhibit "11" to deposition of Keeley.

[40] Deposition of William Keeley, Jr., pp. 133-134.

[41] Deposition of William Keeley, Jr., p. 132.

[42] Deposition of William Keeley, Jr., p. 138.

[43] Deposition of William Keeley, Jr., p. 138.

[44] Deposition of William Keeley, Jr., p. 148.

[45] Deposition of William Keeley, Jr. pp. 54-59.

Mr. Keeley acknowledged that GAB and/or FFIC did not have responsibility for the project's plans or specification, nor for the code compliance, inspection and approval.[46] According to Mr. Keeley, the scope of the work to be prepared by GAB was only for his reference purposes to determine what the project would cost so that he could compare this with what his insurance would cover.[47]

There is no dispute that FFIC paid all of its obligations under the policy. Mr. Keeley was never required to front money nor can he point to any act of FFIC which delayed the project.[48]

RDS also claims that FFIC is liable for damages sustained when FFIC raised RDS's business interruption limits from $142,000 to $242,000. This argument is illogical at best. RDS, prior to accepting the franchisee program policy had the opportunity to review the policy. This policy offered "business income" coverage of $142,000. Mr. Keeley acknowledged that he had reviewed the policy, that he did not object nor voice concern about these policy limits at that time.[49] Then, two weeks after the fire Mr. Keeley benefitted from a retroactive adjustment to the franchisee policy which increased coverage to $242,000.[50] This change increased coverage and waived any co-insurance penalty which would have been applicable to RDS for being under-insured.[51]

Mr. Keeley has alleged that a "policy error" resulted in FFIC's increase in business

---

[46] Deposition of William Keeley, Jr., pp. 168-169.

[47] Deposition of William Keeley, Jr., pp. 131-132.

[48] Deposition of William Keeley, Jr., pp. 133, 157-159.

[49] Deposition of William Keeley, Jr., pp. 39, 42, 188-190, 195-196.

[50] Deposition of William Keeley, Jr., pp. 92-95, 149-150, 154-155, 172, 196.

[51] *Id.*

11

interruption limits. Mr. Keeley bases this argument on the fact that his limit was increased without consulting him and still left him without coverage for approximately two months at the end of the project. This argument is nonsensical. The policy limits were increased, not decreased. They were increased after he suffered his loss, but the increase was made retroactive. These changes were undisputedly in Mr. Keeley's favor. He never questioned or contested the fact that there was a four month limitation, nor did he question the amount of coverage.

FFIC is unsure from the pleadings if RDS is also alleging bad faith[52], but argues that if they are, these claims should be dismissed. LSA R.S. 22:1220(B), cited herein above, sets forth the basis for a claim of bad faith. The statute is penal in nature and must be strictly construed.[53] The commission of one of the specific acts listed is a requirement for a private right of action for bad faith damages against an insurer.[54] RDS has not alleged any of the itemized actions. FFIC paid all policy coverages owed. Therefore, any claim for bad faith damages has not been supported by the plaintiff.

There are no genuine issues of material fact. Accordingly, the Motions for Summary

---

[52] FFIC argues that RDS, in its opposition, fails to do anything but generically reference the statute's number and provisions in its attached "Syllabus of Legal Principles and Table of Authorities." RDS does not explain how the statute would apply or what facts would entitle it to damages for bad faith.

[53] *Smith v. State Farm Fire & Cas. Co.*, 695 F.2d 202 (5th Cir. 1983).

[54] *Bennett v. State Farm Ins. Co.*, 2003-1195 (La. App. 3rd Cir. 3/24/04), 869 So.2d 321.

Judgment by FFIC and GAB will be granted.

Lake Charles, Louisiana, this 23 day of August, 2005.

/s/ Patricia Minaldi
PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE